# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Mann v. Thomas Place, L.P.*, 2012 IL App (1st) 110625

---

| | |
|---|---|
| Appellate Court Caption | JAMES MANN, an Individual, and JOSEPH J. DUFFY PROJECT MANAGEMENT CORPORATION, a Dissolved Illinois Corporation, Plaintiffs-Appellants, v. THOMAS PLACE, L.P., an Illinois Limited Partnership, and THOMAS PLACE, LLC, an Illinois Limited Liability Company, Defendants-Appellees (James N. Bergman, an Individual; Thomas and Thomas Associates, Inc., an Illinois Corporation; Thomas Monico, an Individual; David Smith, an Individual; Glenview Elderly Programs North, Inc., an Illinois Corporation; Equity Growth Group Residential, LLC, an Iowa Limited Liability Company; Paul Thomas, an Individual, and Per Hanson, an Individual, Defendants). |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-0625 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | June 28, 2012<br><br>July 31, 2012<br>August 16, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiffs' third-amended complaint alleging unjust enrichment and *quantum meruit* in connection with a real estate development was properly dismissed as untimely and the relation-back doctrine did not apply where plaintiffs failed to prove the named defendants knew or should have known they would have been named in the original complaint but for plaintiffs' mistake. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05-CH-17539; the Hon. Ronald F. Bartkowicz, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|

| Counsel on Appeal | Canna & Canna, Ltd., of Orland Park (Thomas J. Canna and Joshua R. Runnels, of counsel), for appellants.

DeGrand & Wolfe, P.C., of Chicago (Luke DeGrand and Tracey L. Wolfe, of counsel), for appellees. |
|---|---|

| Panel | JUSTICE STERBA delivered the judgment of the court, with opinion.
Presiding Justice Lavin and Justice Pucinski concurred in the judgment and opinion. |
|---|---|

## OPINION

¶ 1     James Mann and the Joseph J. Duffy Project Management Corporation (collectively, plaintiffs) appeal the circuit court's dismissal of their two-count complaint against Thomas Place, L.P., and Thomas Place, LLC (collectively, Thomas Place defendants). The circuit court dismissed plaintiffs' complaint as to the Thomas Place defendants pursuant to section 2-619(a)(5) of the Code of Civil Procedure (Code) on the grounds that it was barred by the statute of limitations. 735 ILCS 5/2-619(a)(5) (West 2010). On appeal, plaintiffs maintain that the court erred in its dismissal and argue that the relation-back doctrine applies to save their claims. For the reasons that follow, we affirm.

¶ 2                        BACKGROUND

¶ 3     This case arises out of the development and construction of a senior living community known as Thomas Place. In a complaint filed on October 14, 2005, former plaintiff Joseph J. Duffy Company (Duffy Co.) alleged that it served as a developer of Thomas Place but was not selected as the general contractor for the facility after the necessary funding and donation of land was secured, in violation of a joint venture agreement. The complaint named as defendants Thomas & Thomas Associates, Inc. (Thomas & Thomas), Glenview Elderly Programs North, Inc. (GEPN), Equity Growth Group Residential, LLC (Equity Growth), Ryan Companies USA, Inc. (Ryan), James Bergman, Thomas Monico, David Smith, Paul Thomas, and Per Hanson (collectively, the original defendants).

¶ 4     According to the complaint, Thomas & Thomas is a real estate development and consulting company owned by Paul Thomas and Thomas Monico. It is the predecessor of GEPN, which was also known as Glenview Elderly Services North, Inc. (GESN). James Bergman and David Smith are real estate developers who are associated with the construction development company of Equity Growth. Ryan is a construction company, and Per Hanson is an attorney with whom Paul Thomas of Thomas & Thomas consulted

regarding the project.

¶ 5    The initial complaint purported to state causes of action against the original defendants for breach of a joint venture agreement, breach of fiduciary duties, intentional interference with contract, conspiracy to intentionally interfere with contractual rights, *quantum meruit*, and fraudulent inducement. Specifically, Duffy Co. alleged that in June of 1998, it agreed to work as part of a development team with Thomas & Thomas and GEPN to develop Thomas Place. In 2002, Joseph J. Duffy Project Management Company (PMC) and Equity Growth also joined the development team. Although Duffy Co. assisted in creating construction and design plans and securing funding for the project, it was not selected as the general contractor as promised by the original defendants. Instead, Duffy Co. was offered only the right to bid on the construction contract, which it learned was ultimately awarded to Ryan on May 14, 2005.

¶ 6    The circuit court dismissed this initial complaint without prejudice for failure to state a claim pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2010)), which prompted Duffy Co. to file a first amended complaint joining PMC as a plaintiff and adding counts of unjust enrichment and equitable estoppel. Another round of dismissal and amendment followed, after which the circuit court issued an order dismissing the second amended complaint with prejudice. Duffy Co. and PMC then appealed to this court. On February 29, 2008, we affirmed the circuit court's dismissal of the complaint in its entirety with respect to defendant Ryan, and affirmed the dismissal of all counts except those alleging unjust enrichment and *quantum meruit* with respect to all other original defendants (*Joseph J. Duffy Co. v. Bergman*, No. 1-07-0558 (2008) (unpublished order pursuant to Supreme Court Rule 23)).

¶ 7    When the case was once again before the circuit court in April 2009, Duffy Co. and PMC filed a third amended complaint to substitute James Mann, a shareholder of Duffy Co., for Duffy Co. as plaintiff. Plaintiffs alleged Mann and Duffy Co. had previously entered into a stock redemption agreement which provided that if Duffy Co. defaulted in paying costs or attorney fees, Mann would acquire 100% of any litigation award or settlement. In February 2007, Duffy Co. indicated to Mann that it had decided to terminate its interest in the matter and had ceased paying attorney fees. Thus, according to plaintiffs, Mann acquired Duffy Co.'s interest in the litigation.

¶ 8    The third amended complaint also reflected compliance with our February 2008 order and struck all counts except those alleging unjust enrichment and *quantum meruit*. The allegations that remained in support of those counts detailed Duffy Co.'s nongratuitous services provided to the development team, the development team's reliance on Duffy Co.'s expertise to secure financing for Thomas Place, and the team's ultimate refusal to award Duffy Co. the construction contract or any other compensation for its work.

¶ 9    With regard to the ownership of the land on which Thomas Place was to be built, the third amended complaint alleged that at the outset of the development efforts in 1998, the property was owned by the Village of Glenview. Later, in part due to the efforts of Duffy Co., the village donated the land to be used to build Thomas Place in 2004. The complaint was silent as to whom the land was donated, but an application for tax credit submitted to

-3-

the Illinois Housing Development Authority on December 15, 2003, and attached as an exhibit to the complaint, identified the owner as Thomas Place, L.P.

¶ 10    Almost one year after the third amended complaint was filed, during the course of discovery, plaintiffs alleged that they learned for the first time that Thomas Place, L.P., and not GEPN, was the owner of Thomas Place. Further, plaintiffs also discovered that Thomas Place, LLC, was the managing general partner of Thomas Place, L.P. Plaintiffs sought leave to amend the complaint to add these entities as defendants on May 5, 2010, but their motion was opposed by the original defendants on the grounds that it was time-barred. Plaintiffs successfully argued that the operation of the relation-back doctrine saved their claims, and they were granted leave to file a fourth amended complaint on June 9, 2010.

¶ 11    After the complaint was filed, the Thomas Place defendants made a motion to dismiss under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2010)), arguing that: (1) plaintiffs failed to attach the stock redemption agreement proving that Mann had acquired Duffy Co.'s right to pursue the litigation, as required under section 2-606 of the Code (735 ILCS 5/2-606 (West 2010)); (2) plaintiffs lacked standing to sue the Thomas Place defendants; (3) the claims against the Thomas Place defendants were barred by the statute of limitations; and (4) plaintiffs failed to state a claim under which relief could be granted. After hearing arguments on the motion, the circuit court dismissed plaintiffs' complaint against the Thomas Place defendants with prejudice. Specifically, the court found that the complaint was untimely and the requirements of the relation-back doctrine were not satisfied. Plaintiffs timely filed this appeal.

¶ 12                                    ANALYSIS

¶ 13    Plaintiffs' primary contention on appeal is that the trial court erred in finding that the expiration of the statute of limitations served as a basis to dismiss their claims against the Thomas Place defendants pursuant to section 2-619(a)(5). We review *de novo* an order dismissing a complaint under section 2-619. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006).

¶ 14    Actions seeking recovery on the basis of unjust enrichment or *quantum meruit* are subject to the five-year statute of limitations set forth in section 13-205 of the Code. 735 ILCS 5/13-205 (West 2010); see *Frederickson v. Blumenthal*, 271 Ill. App. 3d 738, 742 (1995) (unjust enrichment); *Rohter v. Passarella*, 246 Ill. App. 3d 860, 868 (1993) (*quantum meruit*). In the instant case, plaintiffs did not name the Thomas Place defendants until June 21, 2010, over five years after their cause of action accrued on May 14, 2005, when they were notified that they would not be awarded the construction contract for Thomas Place.

¶ 15    Plaintiffs do not dispute that their claims against the Thomas Place defendants were filed outside the limitations period, but contend that they were unjustly prevented from timely filing an amended complaint against the Thomas Place defendants due to the actions of the original defendants. Specifically, plaintiffs argue that they moved to amend their complaint on May 5, 2010, within the limitations period, but this motion was opposed by the original defendants for the sole purpose of forcing plaintiffs to make an untimely filing. It is sufficient to note that this argument was not raised before the circuit court either in response to the

original defendants' motion opposing the filing of an amended complaint, or in response to the Thomas Place defendants' motion to dismiss, and so is waived for purposes of appeal. See *Johnson Press of America, Inc. v. Northern Insurance Co. of New York*, 339 Ill. App. 3d 864, 874 (2003) (quoting *Softa Group, Inc. v. Scarsdale Development*, 260 Ill. App. 3d 450, 452 (1993)). While we may deviate from this general rule of waiver under certain circumstances, we decline to do so here, as there are no facts in the record below addressing plaintiffs' argument that the opposition to the motion to amend was a delaying tactic on the part of the original defendants. See *Bell v. Louisville & Nashville R.R. Co.*, 106 Ill. 2d 135, 142 (1985) (we may consider an issue not raised in the circuit court only if the record contains "all the factual material that is necessary to decide the issue").

¶ 16    Next, plaintiffs argue that section 2-616(d), which provides that an amended complaint adding a party may relate back to an earlier pleading, operates to save their claims. Section 2-616(d) reads:

"A cause of action against a person not originally named a defendant is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if all the following terms and conditions are met: (1) the time prescribed or limited had not expired when the original action was commenced; (2) the person, within the time that the action might have been brought or the right asserted against him or her plus the time for service permitted under Supreme Court Rule 103(b), received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her; and (3) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, *** even though the person was not named originally as a defendant. For the purpose of preserving the cause of action under those conditions, an amendment adding the person as a defendant relates back to the date of the filing of the original pleading so amended." 735 ILCS 5/2-616(d) (West 2010).

¶ 17    Prior to addressing the parties' arguments as to whether the requirements of section 2-616(d) have been satisfied in the instant case, we must first determine whether the section applies at all by asking if plaintiffs would have named the Thomas Place defendants in their original complaint but for a mistake concerning the identity of the proper party. *Polites v. U.S. Bank National Ass'n*, 361 Ill. App. 3d 76, 82 (2005); see also *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶ 23. The answer to this question depends on the plaintiff's intent, which is established by objective manifestations contained in the record. *Maggi*, 2011 IL App (1st) 091955, ¶ 24; see also *Fassero v. Turigliatto*, 349 Ill. App. 3d 368, 371-72 (2004) ("[t]he most probative evidence of whom the plaintiff intended to sue is the party named in the complaint").

¶ 18    In the case *sub judice*, plaintiffs argue that the initial complaint evinced their intent to recover from everyone who benefitted from their services during development, including the owner of Thomas Place, who they believed was GEPN. We disagree. The claims of *quantum meruit* and unjust enrichment in the timely filed complaints contained allegations only

against members of the development team, who were identified as plaintiffs, Thomas & Thomas, GEPN, and Equity Growth. For instance, in paragraph 16 of the third amended complaint, plaintiffs alleged in part that: "Upon joining the Development Team, Equity Growth acknowledged that Duffy would receive the construction contract to build Thomas Place if the team received IHDA financing. Accordingly, the Duffy entities continued to render non-gratuitous services *to the Team*." (Emphasis added.) Further, paragraph 24 alleged in part that "The Illinois Housing Development Authority ('IHDA') is responsible for awarding the subsidized financing which the Duffy entities assisted in securing *for the Development Team* to construct Thomas Place." (Emphasis added.) However, according to plaintiffs, despite receipt of the necessary funding, the development team ultimately denied plaintiffs the award of the contract. In paragraph 39, plaintiffs concluded that "members of *the Development Team* have caused the Duffy entities damages in excess of one million dollars ($1,000,000)." (Emphasis added.)

¶ 19     Nowhere in any of the timely filed complaints did plaintiffs allege wrongdoing on the part of the owner of Thomas Place. More significantly, the owner of Thomas Place was never identified as GEPN in any iteration of the complaint. Instead, GEPN was described in each complaint only as "an Illinois corporation which regularly does business in Illinois" and referred to as a member of the development team.

¶ 20     Because there is no objective indication that plaintiffs intended to sue GEPN as the owner, *Polites*, relied on by plaintiffs, is distinguishable. There, the plaintiff sustained injuries in a branch of U.S. Bank and named U.S. Bancorp as a defendant after he was led to believe that U.S. Bancorp owned the branch. *Polites*, 361 Ill. App. 3d at 84. When the plaintiff learned after the expiration of the statute of limitations that U.S. Bank was in fact the owner, he sought to amend his complaint pursuant to section 2-616(d). *Id.* at 80. We reversed the lower court's denial of the plaintiff's motion to amend, noting that from the outset, the plaintiff's complaint revealed his intent to sue the owner and operator of the branch office where he was injured. *Id.* at 83. Specifically, the complaint alleged that U.S. Bancorp " 'owned, operated, managed, maintained, and controlled the premises located at 744 North Milwaukee, Chicago.' " *Id.* We concluded that this language clearly reflected plaintiff's erroneous belief that U.S. Bancorp was the owner of the branch, and thus presented a case of mistaken identity. *Id.* at 84.

¶ 21     Here, plaintiffs argue that they were similarly led to believe that GEPN rather than the Thomas Place defendants owned Thomas Place, based on certain documents in their possession, including a quitclaim deed and a Village of Glenview resolution, that identified GEPN as the owner. Leaving aside the fact that other documents, such as a tax credit application attached to plaintiffs' complaint, reflected that Thomas Place, L.P., owned the property,[1] the failure of plaintiffs to objectively convey their belief that GEPN was the owner

---

[1]Plaintiffs maintain that the Thomas Place defendants cannot cite the tax credit application as proof plaintiffs knew GEPN was not the owner, given that defendants have long contended that the application is rife with inaccuracies, including its identification of PMC as a 49% partner in the project and its naming of Duffy Co. as the general contractor. However, for our purposes, the fact that defendants may have discredited the application in the past is not relevant. What is relevant is

is fatal to their claims. We do not agree with plaintiffs that the allegation that "it would be unjust to allow Defendants to keep the value of the services provided by [plaintiffs] without [plaintiffs] receiving appropriate compensation" is objective evidence plaintiffs intended to sue the owner of Thomas Place, particularly where the owner is not specifically identified in the complaint. *Polites* and other precedent establishes that much more specificity is required to show intent. *Polites*, 361 Ill. App. 3d at 83; see also *Maggi*, 2011 IL App (1st) 091955, ¶ 33 (for purposes of analyzing claim of mistaken identity, allegation that entities being sued were those who " 'owned and or were in charge of' " the activities on the project site established that the plaintiff intended to sue the owner). Thus, whether or not plaintiffs were laboring under a misapprehension as to the ownership of Thomas Place does not support plaintiffs' theory of mistake where the complaint made no attempt to hold the owner responsible for plaintiffs' injuries.

¶ 22    Under this circumstance, we find *Pruitt v. Pervan*, 356 Ill. App. 3d 32 (2005), more instructive than *Polites*. In that case, the plaintiff filed a premises liability action against a management company of an apartment building for negligent maintenance of a stairwell. *Pruitt*, 356 Ill. App. 3d at 33. After the expiration of the statute of limitations, she moved to amend her complaint to add claims against the owners of the building because she had learned that they were responsible for the building's maintenance. *Id.* at 33-34. We held that this did not constitute mistaken identity, as the plaintiff did not intend to sue the owners when she filed her original complaint. *Id.* at 37. Instead, she alleged negligence only in the management of the property. *Id.* Therefore, her mistake was in the belief that the management company was solely responsible for her injuries, which was insufficient to invoke the protection of the relation-back doctrine. *Id.* Similarly, here, plaintiffs' mistake was not in failing to correctly identify the owner, but in failing to sue the owner altogether. Because this is not the sort of mistake section 2-616(d) was intended to protect (*id.*), there is nothing in the record to justify application of the relation-back doctrine.

¶ 23    *Siebert v. Bleichman*, 306 Ill. App. 3d 841 (1999), and *Bates v. Wagon Wheel Country Club, Inc.*, 132 Ill. App. 2d 161 (1971), do not compel a different conclusion. As plaintiffs concede, these cases were decided prior to the amendment of section 2-616(d), which allowed relation back based on a plaintiff's "inadvertent" failure to join the proper defendant. *Siebert*, 306 Ill. App. 3d at 844; *Bates*, 132 Ill. App. 2d at 163-64. However, the requirement of inadvertence has been eliminated in the current version of the statute in favor of "more stringent requirements" for amended complaints, intended to bring section 2-616(d) in line with the Federal Rules of Civil Procedure. *Pruitt*, 356 Ill. App. 3d at 36 (citing *Compton v. Ubilluz*, 351 Ill. App. 3d 223, 233-34 (2004)). As such, it is only where a plaintiff has made a mistake in identifying a defendant that the relation-back statute is applicable, which plaintiffs here have failed to show.

¶ 24    Even assuming *arguendo* that this is a case of mistaken identity to which section 2-

---

whether plaintiffs relied on the application's accuracy in making their claims, and this question must be answered in the affirmative, given that it was attached as an exhibit to every version of the complaint.

616(d) applies, plaintiffs nevertheless cannot satisfy the requirement of this section that the Thomas Place defendants knew or should have known that suit would have been brought against them but for plaintiffs' mistake.[2]

¶ 25     On appeal, both plaintiffs and the Thomas Place defendants devote a substantial part of their arguments to answering the question of what plaintiffs did or did not know regarding the identity of the owners of Thomas Place. However, this focus on what plaintiffs knew is misplaced for purposes of determining whether the knowledge requirement of section 2-616(d) has been satisfied. The relevant issue is instead what *defendants* knew. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. ___, ___, 130 S. Ct. 2485, 2493 (2010).[3]

¶ 26     In *Krupski*, the Supreme Court held that relation back under Rule 15(c)(1)(C) asks "what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant." *Krupski*, 560 U.S. at ___, 130 S. Ct. at 2496. The plaintiff's conduct is only relevant to the extent that it makes the defendant aware of whether the plaintiff made a mistake concerning the identity of the proper party. *Id.* at ___, 130 S. Ct. at 2496-97. With those principles in mind, the Court explained that prospective defendant Costa Crociere, the owner of a ship on which the plaintiff sustained injury, should have known it was the proper party where the plaintiff's complaint made clear she was alleging negligence on the part of the ship's owner. *Id.* at ___, 130 S. Ct. at 2497.

¶ 27     Here, in contrast, plaintiffs' complaint did not allege unjust enrichment or *quantum meruit* against the owners of Thomas Place. Nevertheless, plaintiffs contend that because the Thomas Place defendants, as owners of the property, could arguably have been enriched by plaintiffs' development services, they were put on notice that plaintiffs intended to hold them responsible. We disagree. Given that a document attached to plaintiffs' complaint explicitly identified Thomas Place, L.P., as the owner, the Thomas Place defendants could reasonably have concluded that plaintiffs knew of their ownership of the property but did not intend to bring claims against them. As such, plaintiffs have failed to prove that the Thomas Place defendants knew or should have known that they would have been named in the complaint but for plaintiffs' mistake; therefore, the relation-back doctrine does not save plaintiffs' untimely claims.

¶ 28     Finally, we turn to plaintiffs' argument that the decision of the circuit court to allow plaintiffs to amend their complaint to add the Thomas Place defendants foreclosed its ability to subsequently grant the motion to dismiss those same defendants. Plaintiffs explain that when the circuit court granted them leave to add the Thomas Place defendants, it explicitly

---

[2]The Thomas Place defendants do not dispute that the first and third requirements for relation back–the timely filing of the original complaint and an amended complaint that sets forth a cause of action growing out of the same occurrence as the original complaint–are met.

[3]*Krupski* is persuasive authority given that it interprets Federal Rule of Civil Procedure 15(c)(1)(C), after which section 2-616(d) is patterned. *Id.* at ___, 130 S. Ct. at 2492-93; see *Borchers v. Franciscan Tertiary Province of the Sacred Heart, Inc.*, 2011 IL App (2d) 101257, ¶ 45 (federal cases interpreting Rule 15(c)(1)(C) are persuasive authority with regard to analyzing section 2-616(d) claims).

found the elements of the relation-back doctrine were satisfied. Therefore, plaintiffs argue, the law of the case doctrine prohibited the court from later finding, in ruling on a motion to dismiss, that plaintiffs' claims against the Thomas Place defendants did not in fact relate back.

¶ 29 The Thomas Place defendants aptly respond that the law of the case doctrine, which bars relitigation of issues that were previously decided in the same case (*Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006)), is applicable only to final judgments (*People ex rel. Madigan v. Illinois Commerce Comm'n*, 407 Ill. App. 3d 207, 222 (2010)). A final judgment is one which terminates the litigation or disposes of the rights of the parties on the merits. *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008) (quoting *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998)). Here, because the court's decision to grant plaintiffs' motion to amend did not terminate the litigation, it was an interlocutory order which could be vacated at any time prior to final judgment. See *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 698 (2010) (trial court has inherent power to modify or vacate interlocutory orders until entry of a final judgment). Accordingly, nothing operated to bar the court from reversing its prior determination and finding that plaintiffs had not satisfied the elements of the relation-back doctrine.

¶ 30 Because we affirm the circuit court's dismissal of the complaint on timeliness grounds, we need not consider whether other bases, such as lack of standing or failure to state a claim, also support dismissal of the claims against the Thomas Place defendants.

¶ 31 CONCLUSION

¶ 32 For the reasons stated, we affirm the circuit court's order dismissing plaintiffs' claims against the Thomas Place defendants.

¶ 33 Affirmed.